# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ISRAEL OLIVERA,**
                Petitioner,

            v.                          Case No. 08-C-550

**WILLIAM POLLARD,**
                Respondent.

## DECISION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

### I. PROCEDURAL HISTORY

Israel Olivera ("Olivera"), a person incarcerated pursuant to a state court judgment, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Although it was unclear whether Olivera exhausted his state court remedies, the court ordered the respondent to answer the petition. (Docket No. 6.) The respondent filed his answer on September 2, 2008. In this answer, the respondent admitted that Olivera's petition is timely and that he has exhausted all available state court remedies with respect to the constitutional claims set forth in his petition. (Docket No. 13.) On October 6, 2008, Olivera replied. (Docket No. 16.)

After conducting a preliminary review of Olivera's petition, the respondent's response, and Olivera's reply, the court determined that it was necessary to review transcripts of the circuit court proceedings and ordered the respondent to provide those transcripts. (Docket No. 17.) The court has now received those transcripts, and thus the pleadings on Olivera's petition are closed and the matter is ready for resolution. The parties have previously consented to the full jurisdiction of a magistrate judge.

## II. FACTS

Following a jury trial, on December 14, 2005, Olivera was convicted of intentionally pointing a firearm as a person and armed robbery, both as a habitual criminal. (Ans. Ex. A.) This conviction stems from an incident where Olivera robbed a grandmother at gunpoint of the $1,000.00 cash she had with her to loan to her granddaughter for a security deposit and first month's rent. Olivera had been invited into the home by a friend of the granddaughter and when the grandmother began discussing the $1,000.00, he went into the kitchen, emerged with a small handgun, ordered everyone to lie on the floor, and then fled the residence with the $1,000.00.

On January 23, 2006, Olivera was sentenced to a total of 10 years of initial confinement to be followed by 10 years of extended supervision for a total term of imprisonment of 20 years. (Ans. Ex. A.) Olivera appealed his conviction and his appointed appellate counsel filed a no-merit report pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). (Ans. Ex. D.) Olivera filed a response to this no-merit report. (Ans. Ex. E.) On January 24, 2007, the court of appeals summarily affirmed Olivera's conviction and relieved his appellate counsel from further representation. (Ans. Ex. B.) On May 22, 2007, the Wisconsin Supreme Court denied review. (Ans. Ex. C.)

## III. STANDARDS OF REVIEW

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in <u>Williams v. Taylor</u>, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2)

if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing

3

evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

**IV. ANALYSIS**

Olivera seeks relief on three grounds. First, he alleges that his attorney was ineffective for failing to "subpoena the state to produce proof of any bank transaction for the date of August 16, 2005." Second, he appears to allege that his attorney was ineffective for failing to impeach witnesses with their prior inconsistent statements. Third, Olivera alleges there was insufficient evidence to sustain a finding of guilt.

*A. Ineffective Assistance of Trial Counsel*

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that the Wisconsin court's decision was either contrary to, or based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1) standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant under the second prong, the court need not

4

consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

### 1. Bank Records

Olivera's conviction related to the theft of $1,000.00 that the victim had withdrawn from her bank the day before the robbery to loan to her granddaughter for a security deposit and first month's rent on a new apartment. Olivera contends that his trial attorney should have subpoenaed the state to produce proof that the victim conducted a bank transaction the day before. (Docket No. 1 at 7-8.) Olivera then states that this resulted in him being denied a fair trial and that "[f]ailure to produce evidence favorable to the defense is a due process violation." (Docket No. 1 at 7-8.)

The court finds that Olivera fails to prevail on the first prong of the Strickland analysis; there was nothing unreasonable in trial counsel's performance with respect to not obtaining the victim's bank account records to confirm or disprove the victim's testimony. There was simply no reason for the Olivera's counsel to doubt the veracity of the victim's claim that she had withdrawn $1000.00 from her bank to loan to her granddaughter. In addition to the victim, the victim's granddaughter and the granddaughter's friend testified consistently in that all testified regarding the victim making a $1,000.00 loan to her granddaughter for rent and a security deposit. Further, without being asked, the victim testified that she had produced a receipt for the $1,000.00 withdrawal and provided it to a detective on the evening of the robbery. (Ex. 31 at 28.) Having been presented with no reason to investigate the veracity of the victim's claim and in light of the significant testimony corroborating the victim's allegation that she had $1,000.00 prior to the robbery, it was not unreasonable for trial counsel to elect not to obtain the victim's bank records. Further, Olivera's trial counsel used the absence of a receipt or a bank record to Olivera's advantage when, during her closing argument, she noted that although the victim testified that she provided a detective with a receipt, the government failed to produce this evidence at trial. (Ex. 32 at 15.)

5

Therefore, this court is unable to conclude that the court of appeals decision on this issue was plainly contrary to or involved an unreasonable application of the Strickland precedent, and thus Olivera is not entitled to relief on this ground.

2. Prior Inconsistent Statements

Olivera contends that his trial counsel was ineffective for failing to point out certain inconsistencies between the testimony of certain witnesses and between the witnesses' prior statements and testimony at trial. (Docket No. 1 at 7-9.)

For example, a witness testified at the preliminary hearing that the robbery occurred between 11:00 PM and midnight, (Ex. 27 at 7), but he testified at trial that he did not recall when the robbery occurred, (Ex. 31 at 42). The victim testified at the preliminary hearing that the robbery occurred at about 8:30 PM. (Ex. 27 at 11.) The granddaughter's friend testified at trial that the robbery occurred "around 6:00 o'clock" or "it could have been a little later," but not 11:00 PM. (Ex. 31 at 15.) The granddaughter testified that the robbery occurred "probably later" than 6 o'clock. (Ex. 31 at 60.) The first police officer to respond to the scene testified that the call of the robbery came in at 10:33 PM, he was dispatched at 10:35 PM, and he arrived at the scene at 10:43 PM. (Ex. 31 at 74.)

At trial, there were also certain discrepancies between witnesses with respect to how long it took to call the police after the robbery. The granddaughter's friend testified that it was "[a]bout five minutes" after the robbery that the victim called the police, (Ex. 31 at 21), whereas the granddaughter testified that the victim called the police "after she got done being emotional," which "was at least 15 minutes to half an hour" after the robbery, (Ex. 31 at 64).

Likewise, when asked the denominations of the thousand dollars at the preliminary hearing, the victim said, "If I'm not mistaken it was 20s," (Ex. 27 at 11), whereas at trial she testified, "At

6

least five of it was in a hundred dollar bill [sic], and then fifties, and quite a few twenties." (Ex. 31 at 30).

Olivera also points out discrepancies with respect to whether certain witnesses saw the victim with the money. For example, the victim testified that she pulled the money slightly out of her pocket and showed it to her granddaughter and her granddaughter's friend. (Ex. 31 at 3, 31.) But the granddaughter's friend did not tell the police officer she saw the money. (Pet. Ex. at 3-4.) The granddaughter testified her grandmother "flaunted" the money in that she "kind of showed it out of her pocket," (Ex. 31 at 56), but the police report does not mention her seeing the money and states only that her grandmother told her she had the money, (Pet. Ex. at 2).

Olivera's trial counsel did bring out the discrepancy that the witnesses testified at the preliminary hearing that the robbery occurred at 11 PM. (Ex. 31 at 42.) Similarly, in her closing argument, in addition to pointing out various other discrepancies in the witnesses' testimony, she discussed the discrepancy with the timeline offered by various witnesses, (Ex. 32 at 15), inconsistencies with respect to when the police were called, (Ex. 32 at 18-19), and the inconsistencies with respect to whether or not the victim ever showed the money, (Ex. 32 at 15-16).

In light of the fact that Olivera's trial counsel did present these inconsistencies to the jury, the court is unable to say that trial counsel's performance was unreasonable. Therefore, this court is unable to conclude that the court of appeals decision on this issue was plainly contrary to or involved an unreasonable application of the Strickland precedent, and thus Olivera is not entitled to relief on this ground.

## B. *Sufficiency of the Evidence*

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979)

7

(quoting In re Winship, 397 US 358, 364 (1970)). "A federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court." Id. at 318.

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. at 318-19 (internal citations, quotation marks, and footnote omitted).

This court has conducted its own independent review of the entire transcript of the jury trial and concludes that there is sufficient evidence to sustain Olivera's conviction. Physical evidence is not required for a person to be convicted of a crime. Likewise, inconsistencies in the testimony of witnesses do not bar a conviction. These inconsistencies were presented to the jury and the jury was able to reasonably conclude that there existed proof beyond a reasonable doubt that Olivera committed the crimes he was convicted of. Therefore, this court is not persuaded that the conclusion of the state courts was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Thus, the court must deny Olivera's petition on this ground.

**IT IS THEREFORE ORDERED** that Olivera's petition for a writ of habeas corpus is denied. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of May, 2009.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge